Filed 8/10/26  P. v. Cox CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RALPH SILAS COX,<br><br>    Defendant and Appellant. | H052932<br>(Santa Clara County<br> Super. Ct. No. C2111630) |

A jury convicted defendant Ralph Silas Cox of two counts of lewd or lascivious act on a child under age 14 (Pen. Code,[1] § 288, subd. (a)).  The trial court suspended imposition of sentence and placed Cox on probation.

On appeal, Cox claims the trial court erred in denying a motion for new trial based on alleged juror misconduct.  Cox also claims his defense counsel provided ineffective assistance of counsel (IAC) by failing to timely request juror identifying information.

For the reasons explained below, we affirm the judgment.

---

[1] All further unspecified statutory references are to the Penal Code.

# I. FACTS AND PROCEDURAL BACKGROUND

A. *Charges*

In September 2022, the Santa Clara County District Attorney filed an information charging Cox with two counts of lewd or lascivious act on a child under age 14, N. Doe[2] (§ 288, subd. (a); counts 1 & 2). The offenses allegedly occurred about and between August 14, 2017, and August 13, 2019.

The jury heard evidence on the charges in September 2024.

B. *Evidence Presented at Trial*

Doe was 19 years old at the time of trial; Cox was 50 years old.

1. <u>Prosecution Evidence</u>

During middle school, Doe lived with her mother (M.D.) and Cox, who was M.D.'s boyfriend. When Doe was around 12 or 13 years old, Cox began making comments about Doe's body and "outfit decisions." One morning during this period, Cox entered Doe's bedroom, got into bed with Doe, and touched her breasts with his hand over her shirt. Cox also touched Doe's vaginal area with a circular motion over her clothes for a "couple minutes."

Some weeks later, Cox again entered Doe's room and got into bed with her. Cox touched Doe's breasts and vaginal area in the same manner he had previously.

On one occasion around this time, Cox sat on Doe's bed and massaged her feet while her mother was in the shower.

After M.D. received a cancer diagnosis (in early 2020) and the COVID-19 pandemic began, Doe told M.D. about Cox's abusive behavior. Doe explained to the jury that she "didn't really know how things were going to

---

[2] The information identified the minor victim by first initial and the pseudonym "Doe." We refer to the minor as Doe and other persons by their initials to protect their personal privacy interests. (See Cal. Rules of Court, rule 8.90(b)(4), (10)–(11).)

end up or what things would lead up to; so [she] knew that [she] had to get [her]self out of that situation." Doe added that she "saw and heard firsthand the amount of emotional stress that [M.D.] was constantly under" and knew that the "yelling and fighting" between M.D. and Cox "wasn't good."

After Doe reported the abuse to her mother, M.D. told Cox to move out of their home and contacted child protective services.

In May 2020, San Jose Police Department Detective Nicholas Barry received a child protective services report and contacted M.D. Barry learned that M.D. and Doe "were not ready to proceed with the legal process in this matter."

A year later (in May 2021), M.D. contacted Detective Barry and requested that the case be reopened. Barry interviewed M.D. and Doe later that month.[3]

### 2. Defense Evidence

Cox called four witnesses to testify about his good character, including an ex-wife (with whom he had a child), a stepdaughter, a former partner (with whom he had two children), and a former partner's daughter. These witnesses opined that Cox did not have an inappropriate sexual interest in minors.

Cox testified on his own behalf. Cox denied that he touched Doe's breasts or vagina, lay in bed with Doe, rubbed her feet, sat at the edge of her bed and stared at her, or spent time alone with Doe in her bedroom. Cox also denied making comments about Doe's body or her appearance.

---

[3] In addition to the evidence described *ante*, the prosecution presented expert testimony from psychologist Dr. Dawn Blacker on child sexual abuse accommodation syndrome.

Cox explained that his romantic relationship with M.D. began around 2012, and he lived with M.D. and Doe while Doe was in middle school. M.D. supported Cox financially "[m]ost of the time," because he did not have regular work as a flooring contractor. Cox "cheated on" M.D. with more than one woman. Cox and M.D. "argued a lot," primarily about Cox's unfaithfulness. During their relationship, M.D. "kicked" Cox out of her house many times, including "permanently" in April 2020, when Doe reported that Cox had touched her. Thereafter, M.D. and Cox continued their romantic relationship for several months, and M.D. gave Cox a Valentine's Day card in February 2021. During this period, Cox gave M.D. cash "[e]very once in a while" and sometimes borrowed money from her.

Cox testified that Doe "never liked" him. Cox further stated that he "just kind of stayed away" from Doe, and they "didn't really conversate much." According to Cox, Doe seemed upset at times when her mother "gave a lot of attention" to Cox's children.[4]

C. *Deliberation and Verdicts*

The jury began deliberations early in the afternoon of September 24, 2024.[5]

The next afternoon (September 25), the jury returned guilty verdicts on counts 1 and 2. When polled by the courtroom clerk, each juror affirmed the verdicts.

---

[4] In the prosecution's rebuttal case, Doe testified that she did not feel jealous when M.D. paid attention to Cox or his children. Doe denied that she was motivated by jealousy when she told her mother about Cox's abusive behavior and later spoke to the police. Doe reaffirmed that she was truthful during her testimony.

[5] Unless otherwise indicated, all dates were in 2024.

D. *Cox's New Trial Motion*

On December 9, Cox filed a motion for a new trial alleging juror misconduct that violated his constitutional right to due process (§ 1181, subd. (3)) (new trial motion or motion). The motion included a declaration from Juror No. 4 (J.A.).

During jury selection, J.A. had identified himself as a 20-year-old, Mexican American, male college student. In J.A.'s presence, the prosecutor peremptorily challenged J.A. Defense counsel objected to the challenge. The trial court directed J.A. to "resume [his] seat" and immediately conducted a hearing on the objection (made under Code of Civil Procedure section 231.7) outside the presence of the prospective jurors. The prosecutor offered two reasons for the peremptory challenge: (1) J.A. was the only prospective juror to express "an interest and active desire to serve on the jury" and "he talked about it being related to . . . the change in career fields that he's doing moving away from paleontology and towards criminal psychology," and (2) J.A. stated in his juror questionnaire that a prosecutor is "someone who was trying to put someone away" and "specifically said, 'I like seeing defense attorneys work.'" The court sustained under Code of Civil Procedure section 231.7 defense counsel's objection to the prosecutor's preemptory challenge. Thereafter, in J.A.'s presence, the court stated that, based on the discussion it had with counsel for the parties, J.A. "will remain" in his seat.

In his posttrial declaration, J.A. averred: "I voted guilty, but I believe that Ralph Cox is innocent of the charges alleged, and I believed that Ralph Cox was innocent even when I voted guilty. [¶] *I voted guilty because other jurors told me that I could not consider the alleged victim's motive to lie, and that under CALCRIM [No.] 226, I had to accept the alleged victim as credible because her truthfulness was not challenged.* As I deliberated, I did believe

5

that the alleged victim had a motive to lie and that she was not telling the truth, but I felt legally obligated to vote guilty because of what the other jurors told me about CALCRIM [No.] 226."[6] (Italics added.)

J.A. recounted that he had spoken to Cox's defense counsel outside the courthouse on the day the jury returned its verdicts and relayed to counsel his (J.A.'s) belief in Cox's innocence and the obligation to vote guilty. J.A.

---

[6] The trial court instructed the jurors with CALCRIM No. 226 (CALCRIM 226) as follows: "You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have. You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe. [¶] In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are: [¶] How well could the witness see, hear, or otherwise perceive the things about which the witness testified? [¶] How well was the witness able to remember and describe what happened? [¶] What was the witness's behavior while testifying? [¶] Did the witness understand the questions and answer them directly? [¶] Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided? [¶] What was the witness's attitude about the case or about testifying? [¶] Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony? [¶] How reasonable is the testimony when you consider all the other evidence in the case? [¶] Did other evidence prove or disprove any fact about which the witness testified? [¶] Did the witness admit to being untruthful? [¶] Has the witness engaged in conduct that reflects on his or her believability? [¶] Do not automatically reject testimony just because of inconsistencies or conflicts. Consider whether the differences are important or not. People sometimes honestly forget things or make mistakes about what they remember. Also, two people may witness the same event yet see or hear it differently. [¶] If the evidence establishes that a witness's character for truthfulness has not been discussed among the people who know him or her, you may conclude from the lack of discussion that the witness's character for truthfulness is good."

6

further recounted that he spoke to a defense investigator two days later and told the investigator that he (J.A.) "felt obligated to vote guilty because of CALCRIM [No.] 350."[7]  About two months later (on November 22), J.A. spoke again with defense counsel and the defense investigator.  J.A. told them that "even though I believed that Ralph Cox was innocent, *a few other jurors, and specifically, a blond woman who was an engineer, told me that I could not consider the alleged victim's motive to lie because there was no evidence of that motive, so it was just speculation that I had to discount*.  I did believe that the alleged victim had a motive to lie, but I was told that I could not consider that motive under CALCRIM 226, so I felt legally obligated to vote guilty."  (Italics added.)

J.A. concluded his declaration saying:  "I believe that Ralph Cox was innocent, and I expressed to the other jurors that I believed that Ralph Cox was innocent.  At least a few jurors were on the fence about his guilt.  The only reason I voted guilty was because I was told that I could not consider the alleged victim's motive to lie under CALCRIM 226.  If I was told that, legally, I could have considered the alleged victim's motive to lie, I would have voted not guilty."

---

[7] The trial court instructed the jurors with CALCRIM No. 350 as follows:  "You have heard testimony that the defendant is not a sexually deviant person.  [¶]  Evidence of the defendant's character for sexual propriety towards minors can by itself create a reasonable doubt whether the defendant committed a lewd and lascivious act on a child.  However, evidence of the defendant's character for sexual propriety towards minors may be countered by other evidence of his character for the same trait.  You must decide the meaning and importance of the character evidence.  [¶]  You may take that testimony into consideration along with all the other evidence in deciding whether the People have proved that the defendant is guilty beyond a reasonable doubt."

In his motion Cox argued that J.A.'s statements regarding the jury's discussions of CALCRIM 226 were "admissible to prove juror misconduct as it does not implicate the reasoning process of [J.A.] or any other juror; rather, this portion of the [declaration] establishes the *making* of statements which *themselves* constitute misconduct." Cox further asserted that J.A.'s declaration "establishes that multiple jurors improperly introduced erroneous and extraneous law during the deliberation process," which contradicted "instructions given by the court, and by introducing these statements of law, the jurors who made them committed misconduct." Cox additionally contended that the presumption of prejudice could not be overcome because the case turned on Doe's credibility and the "extraneous law injected into the deliberations in this case was directly tied to the alleged victim's motive to lie and credibility."

In written opposition to the motion, the district attorney argued that J.A.'s declaration contained his "subjective mental process during deliberation and is completely inadmissible." The district attorney noted that "[m]any of the statements begin with I believe, or I felt[,] reflecting an internal thought process." The district attorney additionally contended that even if the trial court were to consider J.A.'s declaration, "it still fails to establish misconduct."

The district attorney argued that "[d]iscussions of the law, even if reflecting confusion or disagreement do not amount to misconduct unless there is 'discussion or agreement among the jurors evidencing a deliberate refusal to follow the court's instructions.'" The district attorney further argued that J.A.'s statement about being told by fellow jurors not to consider Doe's "motive to lie because there was no evidence of that motive" does not amount to misconduct. Rather, "this is a fair understand[ing] of the law and

8

instructions given." The district attorney summarized his position as follows: J.A. "was not told to disregard instructions, to consider evidence not admitted at trial, to consider an outside source of law, or to submit to the authority of another juror[']s position or experience, as such no misconduct occurred."

In his reply, Cox asserted that the statements of other jurors recounted by J.A. were "verbal commands given to [J.A.]" and "are more akin to overt acts than to statements which reflect internal thought process, and thus are admissible under Evidence Code section 1150." Cox additionally asserted that the statements established juror misconduct because "[w]hen other jurors told [J.A.] that he must discount evidence of the alleged victim's motive and accept the alleged victim as credible, the jurors injected extraneous law into the jury-room and directed [J.A.] to disregard CALCRIM 226 and submit to their own extraneous version of the law." Regarding prejudice, Cox wrote: "Notably, the prosecution does not argue the issue of prejudice, and *thus concedes it*." (Italics added.)

E. *Hearing on Cox's New Trial Motion and Sentencing*

The trial court held a hearing on Cox's new trial motion and sentencing. After counsel for the parties presented oral argument, the trial court denied the motion. In ruling on the motion, the court noted that the jurors had been polled after they returned their verdicts. The court stated its concern that "if one accepts the averments in [J.A.'s] declaration," J.A. affirmed the verdicts during polling even though "in his mind, that wasn't his true verdict." The court described J.A.'s declaration as including averments about "what [J.A.] was told. 'One juror told me this. The same juror told me this.' It doesn't say 'he forced me.' He doesn't say 'I was intimidated. They all ganged up on me. They said things to me that made me feel uncomfortable. They're so much older than me. They're so much more

9

educated than me. I felt intimidated. I felt in over my head.' " The court further explained that J.A.'s declaration did not include "any averments that show there was anything other than the thoughts, the perceptions, the discussions of the jurors in that deliberative process." The court stated that "[t]here is nothing . . . in the record that would indicate that [J.A.] was someone who was particularly vulnerable or susceptible to pressures in a deliberation scenario."

The trial court found that J.A.'s "declaration should not be admitted because it really does essentially nullify that which we know about what took place at the time that they announced their verdict, the polling affirming the verdict." The court added: "So the court finds that the declaration or the affidavit of the juror is inadmissible under [Evidence Code section] 1150 because it does really contain nothing that sheds light that there was any sort of misconduct in the deliberation of this case." The court additionally found that Cox had received a fair trial and there was no showing of a due process violation.

In sentencing Cox, the trial court suspended imposition of sentence and placed Cox on probation for three years with conditions.

## II. DISCUSSION

A. *Denial of New Trial Motion Alleging Juror Misconduct*

Cox contends the trial court "erred because the motion presented admissible, credible evidence that jury misconduct had occurred that raised a reasonable probability of actual harm."

1. <u>Legal Principles</u>

In a criminal case, a new trial motion may be granted on the ground that the jury engaged in "misconduct by which a fair and due consideration of the case has been prevented." (§ 1181, subd. (3).)

10

"Juror misconduct occurs when an 'overt event is a direct violation of the oaths, duties, and admonitions imposed on actual or prospective jurors, such as when a juror conceals bias on voir dire, consciously receives outside information, discusses the case with nonjurors, or shares improper information with other jurors.' " (*People v. Alvarez* (2025) 18 Cal.5th 387, 434–435.)

" ' "When a party seeks a new trial based upon jury misconduct, a court must undertake a three-step inquiry. The court must first determine whether the affidavits supporting the motion are admissible. [Citation.] If the evidence is admissible, the court must then consider whether the facts establish misconduct. [Citation.] Finally, assuming misconduct, the court must determine whether the misconduct was prejudicial. [Citations.] A trial court has broad discretion in ruling on each of these questions and its rulings will not be disturbed absent a clear abuse of discretion." ' " (*People v. Stayner* (2026) 19 Cal.5th 395, 562 (*Stayner*); see also *People v. Caro* (2019) 7 Cal.5th 463, 521 [Appellate courts "only disturb a trial court's decision on a motion for new trial if the ruling constitutes 'a manifest and unmistakable abuse of . . . discretion.' "].)

" 'When the motion [for new trial] is based upon juror misconduct, the reviewing court should accept the trial court's factual findings and credibility determinations if they are supported by substantial evidence, but [the reviewing court] must exercise its independent judgment to determine whether any misconduct was prejudicial.' [Citation.] 'Juror misconduct gives rise to a presumption of prejudice [citation][, which] the prosecution must rebut . . . by demonstrating "there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment." ' " (*Stayner, supra,* 19 Cal.5th at p. 562.)

11

Admissibility of juror declarations to attack a verdict's validity is governed by Evidence Code section 1150. "Evidence Code section 1150, subdivision (a) provides that, while a verdict's validity may be challenged by evidence of 'statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly,' evidence may *not* be admitted 'to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent or dissent from the verdict or concerning the mental processes by which it was determined.' " (*People v. Nadey* (2024) 16 Cal.5th 102, 170.) Thus, evidence of jurors' "internal thought processes" is inadmissible to impeach a verdict. (*In re Hamilton* (1999) 20 Cal.4th 273, 294; see also *People v. Steele* (2002) 27 Cal.4th 1230, 1264 (*Steele*) ["Because, as a matter of substantive law, the jurors' mental processes leading to the verdict are of no jural consequence, evidence of those mental processes is of no 'consequence to the determination of the action' (Evid. Code, § 210) and hence is irrelevant."].)

Although juror declarations are admissible to the extent that they describe overt acts constituting jury misconduct, " 'juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict.' " (*Harb v. City of Bakersfield* (2015) 233 Cal.App.4th 606, 623.) Moreover, juror statements that amount to overt acts constituting misconduct "must be admitted with caution," because these "[s]tatements have a greater tendency than nonverbal acts to implicate the reasoning processes of jurors—e.g., what the juror making the statement meant and what the juror hearing it understood." (*In re Stankewitz* (1985) 40 Cal.3d 391, 398 (*Stankewitz*).)

12

2. <u>Analysis</u>

Cox claims that the trial court wrongly excluded J.A.'s declaration under Evidence Code section 1150. Cox further maintains he "presented evidence that at least two jurors had committed misconduct by introducing extraneous legal matter into the jury's deliberations." Cox asserts that this juror misconduct prejudiced him and violated his constitutional rights because it concerned the central issue of Doe's credibility and at least two jurors "vouched for the erroneous interpretation of CALCRIM No. 226, multiplying the interpretation's coercive power."

We begin our analysis of Cox's claims by addressing two additional assertions stated in Cox's briefing. First, Cox contends that the trial court "made no adverse credibility determination regarding [J.A.]" and this court "should find no implied adverse credibility determination."

We do not agree. As noted *ante* (pt. I.E.), the trial court observed that acceptance of J.A.'s declaration would require the court to conclude that J.A. falsely affirmed his verdicts during polling. The court's observation amounts to an implicit finding of doubt about J.A.'s credibility and is supported by substantial evidence—namely the discrepancy between J.A.'s affirmation in court that the announced guilty verdict on each count was his "true and correct verdict" and his subsequent averments that he "voted guilty" even though he believed Cox "is innocent of the charges alleged."

Second, Cox faults the trial court for allegedly misreading J.A.'s declaration regarding the number of jurors who made statements about CALCRIM 226's effect on the jury's consideration of Doe's motive to lie. Cox points to the court's description of J.A.'s declaration as including averments that " '[o]ne juror' " (rather than " 'other jurors' ") made the alleged statements about Doe's credibility. Cox asserts that the court's reading of

13

J.A.'s declaration to identify only one offending juror amounts to an abuse of discretion for "failing to base its decision on the evidence."

Cox's contention fails to acknowledge that, at the beginning of the hearing on Cox's motion, the trial court noted that it had read the parties' briefing and described Cox's motion as follows: "The gist of the request for a new trial is on the basis of jury misconduct in the form of information that -- from one of the jurors -- that he received information or communications *from fellow jurors -- one or more fellow jurors* that led to him concurring in a guilty verdict despite the fact that he had reservations of that guilt." (Italics added.) Moreover, later in the hearing, defense counsel similarly described J.A.'s declaration, stating that there was no indication from the declaration that "*the juror or jurors* who made the directive comments accompan[ied] those directive comments with any show of authority in terms of who they are." (Italics added.) Counsel also quoted to the court J.A.'s averment that " 'other jurors told' " J.A. that he could not consider Doe's motive to lie and had to accept her as credible under CALCRIM 226.

Viewed in the totality of the circumstances, we deem the trial court's remark that " '[o]ne juror told [J.A.] this' " to be an offhand, shorthand description of J.A.'s averments, not a definitive pronouncement that reveals the court's misapprehension of the evidence before it.

Turning to Cox's principal claims of error, we are not persuaded that the trial court abused its discretion when it denied Cox's new trial motion. We agree with the Attorney General that the court acted within its discretion in ruling that the entirety of J.A.'s declaration was inadmissible under Evidence Code section 1150, because it reflected the jurors' mental processes during their deliberation.

14

J.A.'s averments about the alleged statements of other jurors during deliberation are inadmissible because the averments incorporate the subjective effect that the juror statements had on J.A. in reaching the verdict and "concern[] the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).) Moreover, even to the extent that J.A.'s averments reflect the way some jurors spoke about CALCRIM 226 in relation to Doe's motive to lie and credibility, J.A.'s averments remain inadmissible.

" ' "[E]vidence of what the juror 'felt' or *how he understood the trial court's instructions is not competent.*' ' " (*Steele, supra,* 27 Cal.4th at p. 1261, italics added.) Where a juror "affidavit or declaration suggests ' "deliberative error" in the jury's collective mental process—confusion, misunderstanding, and misinterpretation of the law,' particularly regarding '*the way in which the jury interpreted and applied the instructions,*' the affidavit or declaration is inadmissible." (*People v. Sanchez* (1998) 62 Cal.App.4th 460, 476, italics added; see also *Eng v. Brown* (2018) 21 Cal.App.5th 675, 710 [juror statements discussing purported confusion about jury instructions are inadmissible to impeach the verdict]; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1684 [evidence about "the way in which the jury interpreted and applied the instructions" is inadmissible]; *People v. Elkins* (1981) 123 Cal.App.3d 632, 636–637 [juror's misinterpretation of court's instructions inadmissible to impeach verdict because it was reflection of juror's subjective mental processes].) These cases support the trial court's ruling that J.A.'s averments about the statements of other jurors concerning CALCRIM 226 and its effect on the jury's credibility determination are inadmissible under Evidence Code section 1150.

Even assuming arguendo that the trial court could have deemed admissible the alleged statements of some jurors to J.A. about CALCRIM 226

15

and the need to accept Doe as credible, the court acted within its discretion when concluding that those statements did not amount to misconduct. In his declaration J.A. averred variously that other jurors told him that under CALCRIM 226, he "had to accept the alleged victim as credible *because her truthfulness was not challenged*" and he "could not consider the alleged victim's motive to lie *because there was no evidence of that motive*." (Italics added.) These averments do not establish that the other jurors introduced into the deliberation extraneous or erroneous law concerning the assessment of witness credibility.

There is no direct conflict between CALCRIM 226 and the statements allegedly made by some jurors about the jury's evaluation of Doe's credibility based on the evidence presented. The alleged juror statements generally accord with the recommendations in CALCRIM 226 about the use of the evidence in deciding witness credibility. Those recommendations include considering the reasonableness of the witness's "testimony when you consider all the other evidence in the case" and whether "other evidence prove[d] or disprove[d] any fact about which the witness testified." The alleged juror statements also seemingly relate to the portion of CALCRIM 226 that reads: "If the evidence establishes that a witness's character for truthfulness has not been discussed among the people who know him or her, you may conclude from the lack of discussion that the witness's character for truthfulness is good."

J.A.'s averments about what the other jurors allegedly said about CALCRIM 226 reflect those jurors' interpretation of the instruction and reveal that they essentially urged J.A. to focus on the trial evidence when judging Doe's credibility. That discussion of the trial court's instructions does not amount to juror misconduct for introducing extraneous law. (See *People*

16

*v. Marshall* (1990) 50 Cal.3d 907, 950; see also *People v. Riel* (2000) 22 Cal.4th 1153, 1218–1219 [citing *Marshall* in upholding the denial of new trial motion based on a juror's statement that if jury gave the defendant the death penalty, " ' "the judge will just commute it to life in prison anyway" ' "]; cf. *Stankewitz, supra,* 40 Cal.3d at pp. 396–400 [a juror who said "that as a police officer he knew the law" and made repeated incorrect statements regarding the elements of a charged offense committed misconduct].)

For these reasons we conclude the trial court did not abuse its discretion in denying Cox's new trial motion for failure to demonstrate juror misconduct.

B. *Alleged IAC for Failing to Request Juror Identifying Information*

Cox contends that his defense counsel provided prejudicially ineffective assistance by making an untimely request for disclosure of juror identifying information during the hearing on the new trial motion and failing to request disclosure of that information earlier.

1. Additional Background

At the hearing on the new trial motion, defense counsel stated that he was "not proposing a[n] evidentiary hearing at this point." Counsel explained that J.A.'s declaration included "statements that were directives given to" him by other jurors and "if the court wanted more information or if the People wanted to test those statements, I think that an evidentiary hearing would be helpful." Counsel continued: "But I think when we're just looking at the issue today of admissibility, it's clear that the statements proffered are the types of statements which are considered more akin to an overt act because . . . it doesn't reflect on the internal process of the person who made the statement, which is the unnamed juror. . . . [¶] And, again, I am not asking the court to consider how that statement would have affected [J.A.] at

17

this point. That's the prejudice analysis. Step 3 takes care of that on its own."

Later, after the trial court noted that defense counsel's argument rested on an assumption that another juror had told J.A. that he could not consider Doe's motive to lie, counsel stated that "in this context, prejudice is essentially presumed" and "the People are essentially conceding it, having not addressed it in their opposition motion." Counsel added: "So I hear the court's point, and I think that if the court's position at this point is that if the court isn't sufficiently satisfied that the statement was made, . . . the appropriate remedy at this juncture would be to unseal juror information and for us to have a further evidentiary hearing. [¶] But I think with what the defense has established [it] certainly gets us over the hurdle of admissible evidence."

Defense counsel later reiterated his position regarding the juror identifying information when responding to the prosecutor's oral arguments against the motion. Counsel explained: "If [the prosecutor] wants a chance to unseal juror records to see if those statements were actually made, if the court's not satisfied with the declaration and wants to hear from [J.A.] or wants to hear from other jurors, I think I understand that at this point, but I think to deny the motion on admissibility grounds at this point is improper given the statements that the defense has proffered."

The trial court did not expressly rule whether juror identifying information should be disclosed to the parties.

2. <u>Legal Principles</u>

Disclosure of juror identifying information is governed by sections 206 and 237 of the Code of Civil Procedure. Code of Civil Procedure section 206, subdivision (g) provides, in pertinent part: "Pursuant to [s]ection 237, a

18

defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose. . . . The court shall consider all requests for personal juror identifying information pursuant to [s]ection 237."

Code of Civil Procedure section 237, subdivision (b) provides, in relevant part: "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause."

" 'Good cause, in the context of a petition for disclosure to support a motion for a new trial based on juror misconduct, requires "a sufficient showing to support a reasonable belief that jury misconduct occurred . . . ." ' [Citation.] The alleged misconduct must be ' "of such a character as is likely to have influenced the verdict improperly." ' " (*People v. Hall* (2024) 104 Cal.App.5th 1077, 1103; see also *People v. Munoz* (2019) 31 Cal.App.5th 143, 165; *People v. Johnson* (2013) 222 Cal.App.4th 486, 493.)

If the trial court finds that the moving party made a prima facie showing of good cause, and if it finds no compelling interest against disclosure, the court shall set the matter for hearing. (Code Civ. Proc., § 237, subd. (b).) The trial jurors are entitled to notice of the hearing and may "appear . . . to protest the granting of the petition." (*Id.*, subd. (c).)

"A criminal defendant's federal and state constitutional rights to counsel (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) includes the right to effective legal assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009

19

(*Mai*), italics omitted.) "To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.' " (*People v. Hoyt* (2020) 8 Cal.5th 892, 958; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687.) We can reject the claim on either element of the standard. (*Strickland*, at p. 687; *People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1008, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

"It is the defendant's burden to demonstrate the inadequacy of trial counsel. We defer to counsel's reasonable tactical decisions and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*People v. Anzalone* (2006) 141 Cal.App.4th 380, 394.) "Competent counsel is not required to make all conceivable motions . . .. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances." (*People v. Freeman* (1994) 8 Cal.4th 450, 509.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more

20

appropriately resolved in a habeas corpus proceeding." (*Mai, supra*, 57 Cal.4th at p. 1009.)

3. <u>Analysis</u>

We are not persuaded that, on this record, there could be no satisfactory explanation for defense counsel's failure to file a petition for disclosure of juror identifying information before the hearing on the new trial motion. The assertions counsel made in his reply brief (see pt. I.D., *ante*) and at the motion hearing regarding the district attorney's apparent concession of prejudice betray a decision by counsel to convince the trial court that J.A.'s declaration was admissible and the averments themselves established misconduct, which, in turn, would give rise to a presumption of prejudice that the district attorney had, to that point, failed to rebut.

In other words, defense counsel seemingly decided, strategically, that because the district attorney did not explicitly dispute in his written opposition any material fact that Cox had alleged concerning the misconduct, the trial court could decide—without holding any evidentiary hearing—that the district attorney had failed to carry his burden to rebut the presumption of prejudice. (See *People v. Hedgecock* (1990) 51 Cal.3d 395, 415 [explaining that "a hearing should be held only when the trial court, in its discretion, concludes that an evidentiary hearing is necessary to resolve material, disputed issues of fact"].) Additionally, counsel may have believed that the other jurors might provide statements contradicting J.A.'s averments about the deliberation if they were contacted, which would have diminished Cox's chances of receiving a favorable ruling on the initial steps of the misconduct inquiry.

21

Because there could be a satisfactory explanation for counsel's failure to request juror identifying information before the hearing, we cannot conclude that counsel rendered ineffective assistance to Cox.

Furthermore, Cox fails to show any prejudice resulting from defense counsel's failure to request juror identifying information. Cox notes that "the prosecution presented no evidence controverting [J.A.]'s declaration." Cox, however, does not point to anything in the record suggesting that if his counsel had requested and received the juror identifying information, that information would have led to admissible evidence from other jurors supporting Cox's claim of juror misconduct. Given the absence of any such information in the appellate record, we conclude there is no reasonable probability that, but for counsel's alleged deficient performance, the outcome of Cox's new trial motion would have been different.

## III. DISPOSITION

The judgment is affirmed.

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P. J.


_____
Bromberg, J.


**H052932**
*People v. Cox*